# STATE OF MICHIGAN

# COURT OF APPEALS

ANN BREAKEY,

Petitioner-Appellant,

v

DEPARTMENT OF TREASURY,

Respondent-Appellee.

FOR PUBLICATION
June 7, 2018
9:00 a.m.

No. 339345
Tax Tribunal
LC No. 17-000218-TT

Before: MURRAY, C.J., and SERVITTO and BOONSTRA, JJ.

MURRAY, C.J.

The question presented is whether petitioner Ann Breakey, as a result of an irrevocable trust granting her the ability to remain in the marital home rent-free in order to maintain the standard of living she enjoyed prior to her husband's death, is an "owner" of the property for purposes of MCL 211.7dd(a), the personal residence exemption (PRE) under the General Property Tax Act (GPTA), MCL 211.1, *et seq*. The Tax Tribunal held that she was not an owner as defined by the statute, and as a result, denied her the use of the PRE. We conclude that she is an owner under MCL 211.7dd(a)(*iii*), reverse the decision of the tribunal, and remand for further proceedings to determine whether she is entitled to the PRE.

## I. FACTS AND PROCEEDINGS

The subject property is a residential property located in the city of Bath, and was originally owned by petitioner and her late husband, William Breakey. On November 11, 1994, William Breakey created the "William E. Breakey Trust No. 1." That same day, petitioner and William conveyed by quit claim deed their ownership of the Bath home to the Trust. Years later in February 2011, "[p]ursuant to the power to make amendments which [he] reserved in the Trust," William "completely restat[ed] the Trust" in the "First Restatement of the William E. Breakey Trust No. 1," naming himself and petitioner as co-trustees. The Trust was revocable by William, who "reserve[d] the right to amend or revoke this [Trust] Agreement, wholly or partly, by a writing signed by me or on my behalf and delivered to Trustee during my life," and would "become irrevocable at my death."

According to petitioner, she and William continued to reside in the Bath home until he passed away in 2012. Upon William's death, William's son, Thomas W. Breakey, was appointed successor trustee. The Trust also created a Marital Trust to provide for petitioner upon William's death. The Marital Trust clause directs the trustee to hold the Trust property for the

benefit of petitioner and to use the Trust assets to "maintain the standard of living" that petitioner enjoyed prior to William's death. It also mandates that the trustee permit petitioner "to use any real estate held in the Marital Trust rent free." According to the Trust, petitioner has the right to remove any successor trustee without cause.

On October 15, 2015, petitioner received a letter from respondent, the Department of Treasury, informing her that it was denying her the PRE for the Bath home for the years 2012, 2013, 2014, and 2015, because "[t]he parcel did not contain a dwelling owned and occupied by a person(s) as his or her principal residence." Petitioner challenged the denial and, after the Department held an informal telephone conference, the referee recommended that the PRE remain denied because petitioner "did not prove by a preponderance of the evidence that she owned the parcel at issue and that the parcel at issue was her principal residence during the years at issue." The Department adopted this recommendation and upheld the denial.

Petitioner appealed the Department's decision to the Tax Tribunal's Small Claims Division. Before a hearing could be held, petitioner filed a motion for partial summary disposition on the legal question of whether she qualified as an "owner" within the meaning of MCL 211.7dd(a). In response, the Department maintained its position that petitioner was not an "owner" as defined by statute, and asked that summary disposition be entered in its favor. On July 3, 2017, the tribunal entered an order denying petitioner's motion for partial summary disposition and granting summary disposition in favor of the Department pursuant to MCR 2.116(I)(2) (opposing party entitled to judgment) because "Petitioner is not an owner or partial owner of the subject property."

## II. ANALYSIS

This Court reviews the grant or denial of a motion for summary disposition de novo. *Briggs Tax Serv, LLC v Detroit Pub Sch*, 485 Mich 69, 75; 780 NW2d 753 (2010). However, "[t]his Court's authority to review a decision of the Tax Tribunal is very limited." *Inter Coop Council v Dep't of Treasury*, 257 Mich App 219, 221; 668 NW2d 181 (2003) (quotation marks and citation omitted). "In the absence of an allegation of fraud," review is restricted "to determining whether the tribunal committed an error of law or adopted a wrong legal principle." *Stege v Dep't of Treasury*, 252 Mich App 183, 187-188; 651 NW2d 164 (2002) (quotation marks and citations omitted).

"Statutory interpretation is a question of law that is reviewed de novo." *Inter Coop Council*, 257 Mich App at 222. This Court's primary goal in interpreting statutes is to determine and give effect to the Legislature's intent. *Briggs Tax Serv, LLC*, 485 Mich at 76. However, this Court affords some deference to the Tax Tribunal's interpretation of a tax statute. *Inter Coop Council*, 257 Mich App at 222. "Although tax laws are construed against the government, tax-exemption statutes are strictly construed in favor of the taxing unit." *Id*.

As noted at the outset of this opinion, the issue before this Court is whether petitioner's interest in a residential property held in an irrevocable trust for her lifetime benefit renders her an "owner" for purposes of the PRE. We hold that petitioner qualifies as an "owner" under the plain language of MCL 211.7dd(a).

Under the GPTA, all real property not expressly exempted is subject to taxation. MCL 211.1. One exemption under the GPTA is the PRE,[1] which exempts qualifying property from "the tax levied by a local school district for school operating purposes." MCL 211.7cc(1). In order to claim the PRE, a person must (1) own the property and (2) occupy it as his or her principal residence. MCL 211.7cc(2). A principal residence is "the 1 place where an owner of the property has his or her true, fixed, and permanent home to which, whenever absent, he or she intends to return and that shall continue as a principal residence until another principal residence is established." MCL 211.7dd(c).[2] MCL 211.7dd(a) provides, in relevant part, that for purposes of the PRE,

> (a) "Owner" means any of the following:
>
> * * *
>
> (*ii*) A person who is a partial owner of property.
>
> (*iii*) A person who owns property as a result of being a beneficiary of a will or trust or as a result of intestate succession.
>
> * * *
>
> (*vi*) A grantor who has placed the property in a revocable trust or a qualified personal residence trust.

Petitioner argues that she is an "owner" under both MCL 211.7dd(a)(*ii*) and (*iii*).[3]

We first turn our attention to MCL 211.7dd(a)(*iii*), since there is no dispute that petitioner resides at the Bath house "as a result of being a beneficiary of a . . . trust." To determine whether petitioner "owns" the Bath house under this statutory provision, we look to *Flowers v Bedford Twp*, 304 Mich App 661, 665; 849 NW2d 51 (2014), where this Court concluded that the definition of the term "owner" contained within MCL 211.7dd(a)(*ii*) is circular because it uses

---

[1] This exemption is also commonly known as the "homestead exemption." *EldenBrady v Albion*, 294 Mich App 251, 256; 816 NW2d 449 (2011).

[2] Importantly, petitioner acknowledges that this is an issue of fact that she must establish before the tribunal; the only issue before the tribunal to date, and what is at issue here, is petitioner's status as an "owner" of the Bath home. Whether she occupies the house as her principal residence must be decided on remand.

[3] Additionally, amicus curiae the Probate and Estate Planning Section of the State Bar asserts that petitioner is an owner under MCL 211.7dd(a)(*vi*), as "[a] grantor who has placed the property in a revocable trust." Amicus, however, cannot raise issues not raised by the parties, *Ketchum Estate v Dep't of Health & Human Servs*, 314 Mich App 485, 498 n 8; 887 NW2d 226 (2016), and petitioner did not make that argument before this Court.

the very term to be defined in the definition.[4]  Accordingly, the *Flowers* Court consulted a dictionary to provide meaning to the terms "own" and "owner." *Flowers*, 304 Mich App at 665. Consulting *Random House Webster's College Dictionary* (1997), the Court explained:

> "Owner" is the derived, undefined noun form of "own."  "Own" is defined, in part, as "something that belongs to oneself" or "to have or hold as one's own; possess."  And "ownership" is defined as "the state of or fact of being an owner" or "legal right of possession; proprietorship."  [*Flowers*, 304 Mich App at 665 (citations omitted).]

This Court continued, quoting from our Supreme Court's opinion in *Barnes v Detroit*, 379 Mich 169; 150 NW2d 740 (1967):

> "This Court has many times held that a person does not have to own property in fee simple to claim a homestead.  The word 'owner' as used in the law has generally been treated as including all parties who had a claim or interest in the property, although the same might be an undivided one or fall short of an absolute ownership, and possession alone has frequently been held, in reference to personal property, as prima facie evidence of ownership."  [*Flowers*, 304 Mich App at 665, quoting *Barnes*, 379 Mich at 177.]

Applying these definitions, the *Flowers* Court held that the petitioner was an "owner" for purposes of MCL 211.7dd(a)(*iii*), and a partial owner under MCL 211.7dd(a)(*ii*), because her deceased husband's will granted her a life estate in the property.  *Id*. at 665-666.  And a life estate allowed the petitioner to come within the definition of "owner" because, as the Court recognized, it gave the petitioner "the right to possess, control, and enjoy the property during the [petitioner]'s lifetime." *Id*. at 665.

Utilizing these same definitions, we conclude that petitioner is an "owner" under MCL 211.7dd(a) because she holds as her own the Bath property as a result of being a beneficiary of the Marital Trust.  MCL 211.7dd(a)(*iii*).  There is no dispute that petitioner currently possesses the property.  She resides on the property, makes use of it as she sees fit, and has done so for many years. Although the Trust owns the Bath home property, it holds it for petitioner's benefit. Petitioner is granted the use "rent-free" so that it will not be cost prohibitive for her to continue living the lifestyle she lived when her husband was alive, and there are no restrictions preventing her from exclusively using the property for the remainder of her life.  Indeed, as petitioner argues, she has the unfettered right to remove the successor trustee, ensuring that if that trustee were to seek her removal (or, for example, to sell the house without her permission), she could remove him for taking action inconsistent with the Trust and her wishes.  Therefore, though the Trust is the legal owner of the Bath home, petitioner holds the equitable interest.  See *Equitable Trust Co v Milton Realty Co*, 261 Mich 571, 577; 246 NW 500 (1933) (holding that "[t]o create a trust, there must be an assignment of designated property to a trustee with the intention of

---

[4] This is similarly true of MCL 211.7dd(a)(*iii*), defining "owner" as "[a] person *who owns* property as a result of being a beneficiary of a will or trust . . . ." (Emphasis added.)

passing title thereto, to hold for the benefit of others"); MCL 555.16. Under these undisputed facts, petitioner held the Bath house as her own, and she qualifies as an owner under MCL 211.7dd(a)(*iii*).

Petitioner cites *Barnes* to support her claim that "possession alone" is the most relevant consideration in determining whether a person is an "owner." But *Barnes* is not particularly helpful to petitioner. In that case, Mr. Barnes was attempting to claim a veteran's homestead exemption, which contained language similar to that for the PRE.[5] *Barnes*, 379 Mich at 172. However, Mr. Barnes had a two-fifths undivided interest in common in a residential property, which in conjunction with his possession of the property, made him an "owner." *Id*. at 177. Petitioner's selective extraction of the phrase "possession alone" from the *Barnes* Court's analysis ignores that the plaintiff had a two-fifths "claim or interest in the property." *Id*.[6] Further, although *Barnes* noted that control was not an element of the homestead exemption statute at issue, the discussion of control that did occur in *Barnes* was focused on the rights of owners who hold property as part of a tenancy in common. *Id*. at 176. *Barnes* is helpful because "possess" is part of what "own" means, but it is not as dispositive as petitioner thinks.

In relation to the tribunal's reference to the control one must maintain over the property to be an owner, we note that the *Flowers* Court did not utilize "control" in its definition of "owner" or "own." *Flowers*, 304 Mich App at 665. Yet, in granting summary disposition in favor of the Department, the tribunal relied on one of its prior unpublished opinions, *Johnson v Dep't of Treasury*, unpublished opinion of the Michigan Tax Tribunal, issued October 13, 2015 (Docket No. 12-007849), which expanded upon the *Flowers* definition by including the element of control. In *Johnson*, a trust held property for the petitioner that expressly allowed her to "occupy" and reside at the property "rent-free." *Johnson*, unpub op at 3. An administrative law judge found that the petitioner was a partial owner of the property because of her legal right of possession. *Id*. The tribunal disagreed, explaining that the ALJ's interpretation erroneously encompassed only occupation, but that the definition of "possession" also includes " '[t]o have in one's actual control,' " and that control meant "[t]o exercise power or influence over." *Id*., quoting *Black's Law Dictionary* (10th ed) (alterations in original). Finding that the petitioner's rent-free occupancy did not amount to "actual control" over the property, the tribunal concluded that she was not an "owner." *Johnson*, unpub op at 3.

Although it was understandable for the tribunal to have relied upon the analogous *Johnson* decision, the definition of "owner" adopted in *Johnson*—and applied to petitioner here—is erroneous because it improperly alters the definition provided to "owner" and "own" in *Flowers*.

---

[5] That exemption required that a property be "used and owned as a homestead" by a veteran. *Barnes*, 379 Mich at 176 (emphasis omitted).

[6] Furthermore, if "possession alone" is what "the definition of 'owner' revolves around" as petitioner argues, then a renter who has no other discernable interest in the land would be an owner, but a renter is undoubtedly different under the law than an "owner."

The words used by the Legislature are "the most reliable evidence of the Legislature's intent." *Gillie v Genesee Co Treasurer*, 277 Mich App 333, 345; 745 NW2d 137 (2007). As determined by *Flowers*, MCL 211.7dd(a) and its circular definition of the term "owner" does not include the term "control." After properly consulting a *lay* dictionary to ascertain the meaning of "owner," this Court provided a definition that did not include the term "control." *Flowers*, 304 Mich App at 665.[7] Although the *Johnson* tribunal consulted a legal dictionary, this Court had determined that, for purposes of defining "owner" for the PRE, it was appropriate to consult a lay dictionary. *Flowers*, 304 Mich App at 665. Utilizing a legal definition was contrary to *Flowers*, and to settled precedent. See *Robinson v Detroit*, 462 Mich 439, 456 n 13; 613 NW2d 307 (2000) (recognizing that "[i]t is appropriate to consult a lay dictionary when defining common words or phrases that have not acquired a unique meaning at law because 'the common and approved usage of a nonlegal term is most likely to be found in a standard dictionary and not a legal dictionary' ") (citation omitted). By using the legal definition of "possession," the tribunal erroneously concluded that control[8] was a necessary element of ownership.

We also cannot help but recognize that application of the Department's own published guidelines confirms petitioner's status as an owner. The Department provides the following published guidance to the public:

> 3. As the beneficiary of a trust, when are you considered eligible for a principal residence exemption?
>
> Upon the death of the grantor of the trust, provided you occupy the property as your principal residence.

---

[7] As noted, the term "control" was brought up in relation to the Court's explanation of the general rights of a life estate holder—"to possess, *control*, and enjoy the property during the holder's lifetime." *Flowers*, 304 Mich App at 665 (emphasis added). The *Flowers* Court never discussed or relied upon any control that the petitioner exerted over the property in that case.

[8] In the legal sense, to "own" is "[t]o rightfully have or possess as property; to have legal title to." *Black's Law Dictionary* (10th ed). To "possess" is "[t]o have in one's actual control; to have possession of." *Id*. To "control" is "[t]o exercise power or influence over . . . ." *Id*. Hence, even if control was a dispositive factor, the terms of the Trust direct the trustee to hold the residue of the Trust, including the Bath home, for the benefit of petitioner only. We agree with petitioner and amicus curiae that petitioner has "control" over the Bath home because she has the "right to exclude others" for the entirety of her life and because she has power over the Trust administration. It can be inferred, because petitioner is the only beneficiary of the Trust property, including the Bath home, that she is the only person permitted to use it. The trustee is not afforded any power to convey or grant ownership of the real estate. Finally, petitioner is solely afforded the right to remove any trustee without cause. In essence, because the Trust owns the property and because only petitioner may determine who the trustee is and how the Trust operates, she has "control" over the Bath home.

*  *  *

6. The owner of the principal residence died. Before his/her death, the owner placed the property in a revocable trust that specified that the surviving spouse was a life beneficiary. The surviving spouse occupies the home as a principal residence. Can he/she claim the exemption?

Yes. Upon the death of the grantor of the trust, the life beneficiary is considered the owner of the home and may claim a principal residence exemption on the property.[9]

The tribunal ignored these guidelines because agency interpretations do not have the force of law. That is certainly a true statement, but this Court still affords an agency's construction of a statute " 'respectful consideration,' " *In re Rovas Complaint*, 482 Mich 90, 103; 754 NW2d 259 (2008), as an agency's interpretation can be "helpful in ascertaining the legislative intent," *Id*. at 118. Although lacking the force of law, the Department's own interpretation of the statute to include trust beneficiaries as "owners" is consistent with *Flowers* and our resolution of this case.

For these reasons, we reverse the tribunal's order and remand for further proceedings on petitioner's claim of entitlement to a PRE. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Deborah A. Servitto
/s/ Mark T. Boonstra

---

[9] Michigan Department of Treasury, *Guidelines for the Michigan Principal Residence Exemption Program*, p 9, available at <https://www.michigan.gov/documents/taxes/2856_PRE_guidelines _607370_7.pdf> (accessed March 11, 2018).